IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| SAMUEL C. GARDNER, in his individual capacity, and in his capacity as Successor Trustee of The 2014 PB Living Trust, | ) ) ) ) ) ) | **JURY TRIAL DEMANDED** |
| Plaintiff, | ) ) | CIVIL ACTION NO. |
| v. | ) ) | _____ |
| GARY SINISE FOUNDATION, | ) ) ) | |
| Defendant. | | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE:

SAMUEL C. GARDNER, in his individual capacity, and in his capacity as Successor Trustee of the 2014 PB Living Trust (hereinafter referred to as "Plaintiff" or "Gardner" or "Successor Trustee"), complains of GARY SINISE FOUNDATION (hereinafter referred to as "Defendant", "Gary Sinise Foundation", the "Foundation" or "GSF"), and says:

## I.

## NATURE OF THE ACTION

1.     This is an action for, *inter alia*, breach of contract, declaratory relief, forfeiture of property, forfeiture of benefits under a Texas trust, reformation of the Trust, a declaration regarding rights and responsibilities under a Texas trust, and declaration of rights and responsibilities of Plaintiff as Successor Trustee of the 2014 PB Living Trust dated March 27, 2014, settled and created by Pamela E. Banks ("Pamela Banks" or "Banks") (the "Trust" or "2014 PB Living Trust").

2.     Plaintiff is a citizen of the State of Texas. Plaintiff is the Successor Trustee of the 2014 PB Living Trust. Plaintiff does business and resides in Denton County, Texas and has done so for the past four years or more. The situs of administration of the Trust is maintained in Denton County, Texas and has been so maintained since at least February 26, 2022. Plaintiff administers the Trust as Successor Trustee in Denton County, Texas at his office located in Frisco, Texas. Defendant has its principal place of business and is a citizen of the State of Tennessee. Defendant is a Delaware non-profit corporation organized under the laws of the State of Delaware. Citizenship of the parties is diverse.

## II.

## THE PARTIES

### a.

### Plaintiff

3.     Plaintiff is a citizen of the State of Texas and resident of Denton County, Texas. Plaintiff lives in and administers the Trust in Denton County, Texas. Real property assets of the Trust are located in Collin County, Texas.

### b.

### Defendant

4.     Defendant is a nonresident non-profit corporation incorporated under the laws of the State of Delaware. Defendant's principal office and principal place of business is in Franklin, Tennessee. Defendant solicits donations nationwide and solicits donations from donors in the State of Texas. Defendant is not a Texas Citizen for purposes of diversity jurisdiction.

5.     Defendant has appointed as its registered agent Corporate Creations Network, Inc. whose address is 3411 Silverside Road Tatnall Building, Suite 104, Wilmington, Delaware, New Castle County, Postal Code 19810. Plaintiff requests that a summons be issued and served on Defendant's registered agent and that Defendant be compelled to answer Plaintiff's complaints contained herein.

### III.

### JURISDICTION AND VENUE

#### a.    Jurisdiction

6.    Jurisdiction is based upon 28 U.S.C. §1332.  This action is a matter in controversy between citizens of different states. Plaintiff is a citizen of the State of Texas. Defendant is a citizen of the States of Delaware and Tennessee. Defendant is not a citizen of Texas. The amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

7.    This Court has supplemental jurisdiction over Plaintiff's claims under Texas law under 28 U.S.C. §1367.

8.    This Court has jurisdiction pursuant to 28 U.S.C. §2201.

#### b.    Venue

9.    Venue is proper in this district and division under 28 U.S.C. §1391 based on Plaintiff's citizenship and residence, and operation of Plaintiff's business and administration of the Trust in Denton and Collin Counties, Texas. The Trust and the assets of the Trust are located in Denton and Collin Counties, Texas.

10.    Plaintiff is the Successor Trustee of the Trust and venue for purposes of the Trust is where the Successor Trustee resides or regularly maintains the situs of administration of the Trust.

11.    The conduct, actions, facts and circumstances, and the assets of the Trust described herein, and the matters and facts described herein all occurred within the United States District Court for the Eastern District of Texas, Sherman Division.

12.    Defendant regularly transacts business within the United States District Court for the Eastern District of Texas, Sherman Division. Defendant regularly solicits donations to Defendant from donors within the boundaries of the United States District Court for the Eastern District of Texas, Sherman Division.

13.    Defendant traveled to the United States District Court for the Eastern District of Texas, Sherman Division, as described in the statement of facts herein, to conduct Defendant's business, as described in the statement of facts herein. Defendant met with Plaintiff, Gardner, the Successor Trustee of the Trust and conducted an investigation of Trust property located in Collin County, Texas and within the United States District Court for the Eastern District of Texas, Sherman Division.

14.    Defendant retained legal counsel and brought legal proceedings against Plaintiff, Gardner, the Successor Trustee, in Denton County, Texas and within the boundaries of the United States District Court for the Eastern District of Texas, Sherman Division. Defendant participated in a mediation and initiated an arbitration proceeding in Denton County, Texas and within the boundaries of the United States District Court for the Eastern District of Texas, Sherman Division.

15.    Therefore, venue is proper in this district and division under 28 U.S.C. §1391 because Defendant conducts business in the jurisdiction of the United States District Court for the Eastern District of Texas, Sherman Division, as described above and as described in the statement of facts.

16.    Venue is proper in this district and division under 28 U.S.C. §1391 because Defendant is subject to the Court's personal jurisdiction with respect to the civil action in question, and Defendant has sufficient contacts in the United States District Court for the Eastern District of Texas, Sherman Division to be considered a resident in this district and division under federal law.

17.    Venue is proper in this district and division under 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in Collin County, Texas and Denton County, Texas, all within the United States District Court for the Eastern District of Texas, Sherman Division.

18.    Defendant is subject to personal jurisdiction within the United States District Court for the Eastern District of Texas, Sherman Division.

19.    Defendant regularly transacts business in the United States District Court for the Eastern District of Texas, Sherman Division, and specifically transacted business with respect to Plaintiff and the Trust in Collin County, Texas and Denton County, Texas, all within the United States District Court for the Eastern District of Texas, Sherman Division.

20.    Defendant has engaged, and continues to engage, in the transaction of business in interstate commerce in Denton County, Texas and Collin County, Texas, all within the jurisdiction and venue of the United States District Court for the Eastern District of Texas, Sherman Division.

21.    This Court is a court of law and equity.

## IV.

## STATEMENT OF FACTS

22.    Plaintiff currently resides in Frisco, Texas, Denton County, Texas and is a citizen and resident of Denton County, Texas.

23.    On July 2, 2019, Pamela E. Banks, as settlor, executed the "FIRST AMENDMENT AND COMPLETE RESTATEMENT OF THE 2014 PB LIVING TRUST DATED MARCH 27, 2014" (the "2014 PB Living Trust") which was amended by Pamela E. Banks, Settlor of the 2014 PB Living Trust, effective on the 2nd day of July, 2019 (*See* Exhibit 1, attached at 25).

24.    Pamela E. Banks appointed "her friend, Samuel C. Gardner, to serve as the Successor Trustee of all trusts created or continued hereunder" in the 2014 PB Living Trust. (*See* Exhibit 1 at 7, Section VII.)

25.    Plaintiff is the Successor Trustee of the 2014 PB Living Trust today. Plaintiff continues to serve in the capacity as Successor Trustee of the 2014 PB

Living Trust and to exercise all responsibilities and powers set forth and/or referenced in the 2014 PB Living Trust.

26.    Plaintiff knew Pamela E. Banks prior to her death. Plaintiff's wife, Debbie Gardner, and Plaintiff both knew Pamela E. Banks and visited and socialized with her often prior to her death. Plaintiff's wife, Debbie Gardner, also assisted Pamela E. Banks when Ms. Banks attended doctor's appointments. Plaintiff's wife Debbie and Plaintiff were close friends of Pamela E. Banks prior to her death.

27.    Plaintiff represented Pamela E. Banks as her real estate agent for many years in Collin County, Texas. Plaintiff represented Pamela E. Banks as the Buyer's agent when Pamela E. Banks purchased the property located at #7 Stonebriar Way, Frisco, Collin County, TX 75034, which was the residence she resided at and was her home on the date of her death.

28.    Pamela E. Banks was never married and had no children. Her mother, father and siblings predeceased her. Ms. Bank's closest relatives were some cousins. She did not have a good relationship with her cousins.

29.    On July 2, 2019, Pamela E. Banks, Testatrix, executed and signed the "Last Will and Testament of Pamela E. Banks" dated July 2, 2019 (the "Will"). (*See* Exhibit 2, attached at 10-12).

30.    Pamela E. Banks appointed "my friend, Samuel C. Gardner, to serve as Independent Executor without bond" of her Will. (*See* Exhibit 2, at 3).

31.     In addition to appointing Plaintiff as her Successor Trustee of the Trust and to serve as the Independent Executor of her Will, Pamela E. Banks also appointed Plaintiff ("Samuel C. Gardner") and Plaintiff's wife ("Debbie D. Gardner") "to act as my agents with respect to the subject matter specified in" the HIPPA Release. (*See* Exhibit 3, attached). Plaintiff and Plaintiff's wife, Debbie D. Gardner, acted as agents for Pamela E. Banks in this respect upon her physical inability to act after the heart attack which occurred in Grayson County, Texas and which eventually took her life.

32.     In addition to appointing Plaintiff as her Successor Trustee of the Trust, to serve as the Independent Executor of her Will, and to act for or with respect to her HIPPA Release, Pamela E. Banks also designated and appointed Plaintiff ("Samuel C. Gardner") and Plaintiff's wife ("Debbie D. Gardner") "as my agent to make any and all health care decisions for me" in the event that "I become unable to make my own health care decisions." (*See* Exhibit 4, attached, at 1). Plaintiff accepted this designation and appointment. Plaintiff made the decision, based upon this designation and appointment, and advice and counsel from Ms. Banks' doctors, to remove medical life support from Ms. Banks after Plaintiff was advised that Ms. Banks could not recover from the heart attack she suffered in February 2022 in Grayson County, Texas. It was a difficult decision for Plaintiff because of his close personal friendship and relationship with Ms. Banks.

33.    Pamela E. Banks died on February 26, 2022 in Grayson County, Texas. At the time of her death, Pamela E. Banks was a resident and citizen of Collin County, Texas

34.    Plaintiff officiated the funeral and memorial service for Ms. Banks.

35.    Upon the death of Pamela E. Banks on February 26, 2022, in accordance with the terms of the Trust, Plaintiff became the Successor Trustee of the Trust. Plaintiff remains the Successor Trustee of the Trust as of the filing of this Original Complaint.

36.    The Trust provides that "[i]f the Trustee [originally Pamela E. Banks] becomes incapacitated, or fails or ceases to act for any reason, then the successor or substitute Trustee shall serve in the capacity of Trustee herein." (*See* Trust, Exhibit 1, at 3).

37.    Under Section III. of the Trust entitled "COLLECTION OF LIFE INSURANCE AND EMPLOYEE BENEFIT PLAN PROCEEDS" Plaintiff, Gardner was instructed as follows: "In respect to any and all life insurance policies of which the Trustee shall then be beneficiary, upon the death of the insured [Pamela E. Banks] *the Trustee [Plaintiff, Gardner] shall take possession of said policies and collect the full proceeds thereof*." "The Trustee [Plaintiff, Gardner] *is authorized to compromise and adjust claims arising out of the life insurance policies* or any of them upon such terms and conditions as the Trustee [Gardner] deems just and the

*decision of the Trustee [Plaintiff, Gardner] shall be binding upon all persons interested therein*." (*See* Trust, Exhibit 1 at 4, ⁋ III.) (emphasis added).

38.    Under Section VII. of the Trust entitled "TRUSTEES AND TRUSTEES' POWERS", the Trust provides: "The Settlor [Pamela E. Banks] appoints PAMELA E. BANKS to serve as the Trustee of all trusts created or continued hereunder. Provided, however, if PAMELA E. BANKS for any reason shall fail, cease or refuse to act as Trustee hereunder, then the Settlor [Pamela E. Banks] *appoints her friend SAMUEL C. GARDNER to serve as the successor Trustee* of all trusts created or continued hereunder." (*See* Trust, Exhibit 1 at 7) (emphasis added).

39.    Under Section VII. of the Trust entitled "TRUSTEES AND TRUSTEES' POWERS," the Trust provides broad powers to the Successor Trustee, Plaintiff, including, *inter alia*, the following: "The Trustee and any successor Trustee from time to time acting hereunder shall have and exercise the following rights, powers and privileges and shall be subject to the following duties, provisions and limitations."

40.    For instance, under Section VII. of the Trust, ⁋ B., Plaintiff, Gardner, the Successor Trustee, "shall have full power and authority to manage, handle, invest, reinvest, convert, reconvert, sell for cash or credit, or for part cash and part credit, exchange, hold, dispose of, lease for any period, whether not longer than the

life of the trust, improve, repair, maintain, work, develop, operate, use, mortgage, or pledge all or any part of the funds, assets and property constituting from time to time any part of the trust." (*See* Trust, Exhibit 1 at 8).

41.    The broad powers to manage any and all affairs of the Trust given to Plaintiff, Gardner, Successor Trustee, also authorized Plaintiff, Gardner, Successor Trustee, "to employ attorneys, accountants, investment managers, specialists and other agents as the Trustee shall deem necessary or desirable." (*See* Trust, Exhibit 1 at 9).

42.    Included within the broad powers granted by the Trust to Plaintiff, Gardner, the Successor Trustee, was the authority to "charge the compensation of such attorneys, accountants, investment advisors, investment managers, specialists and other agents and *any other expenses against the trust*." (*See* Trust, Exhibit 1 at 9) (emphasis added).

43.    The Trust clearly contemplated and intended, as is typical of most Texas trusts, that Plaintiff, Gardner, not be burdened with paying and incurring trust expenses from plaintiff, Gardner's personal resources and funds, and that, to the extent Plaintiff, Gardner incurs any personal expenses in the administration and handling of the Trust, the Trust clearly provides that Plaintiff, Gardner, is entitled to be reimbursed from the Trust assets.

44.     The Trust also authorized Plaintiff, Gardner, the Successor Trustee, to engage in transactions with "a relative of the trustee" "to the same extent and manner and for the same investment purposes as herein provided in respect of transactions with disinterested parties" and that "[t]he provisions of this paragraph are made in full realization that said Trustee may be a partner, officer, director or stockholder in any such entity or an executor, administrator or guardian of an estate, and no principle or rule relating to self-dealing or divided loyalty shall be applied to any act of said trustee." (*See* Trust, Exhibit 1 at 9-10).

45.     The Trust also provided Plaintiff, Gardner, the Successor Trustee, with the power to act as the Successor Trustee with no bond and no court supervision, and that the "powers conferred upon the Trustee herein shall not be construed as in limitation of any authority conferred by law, but shall be construed as in addition thereto." (*See* Trust, Exhibit 1 at 12, ¶¶ L., M. and O.)

46.     The Trust further provided that "[f]or services rendered as Trustee hereunder, any individual Trustee serving hereunder [as is Plaintiff, Sammy Gardner] shall be entitled to *reasonable fees* commensurate with the Trustee's duties and responsibilities, taking into account the value and nature of the trust fund and the time and work involved." (*See* Trust, Exhibit 1 at 12, ¶ O.) (Emphasis added).

47.    The Trust additionally specifically provides that "[a]ny Trustee *shall be also entitled to reimbursement for all reasonable expenses incurred*" in acting as a Trustee. (*See* Trust, Exhibit 1 at 12, ¶ O.) (Emphasis added).

48.    With respect to the liability of Plaintiff, Gardner, the Successor Trustee, the Trust provides that "[n]o *individual trustee* [like Plaintiff, Gardner] shall be liable for negligence or error of judgment, but shall be liable only for such Trustee's *willful misconduct* or *personal dishonesty*." (*See* Trust, Exhibit 1 at 17, § VII.AA.) (Emphasis added).

49.    Pursuant to section XI. of the Trust, Defendant, Gary Sinise Foundation, was identified as the "heirs-at-law" with respect to any "distributions under this Trust Agreement," when, in the sole discretion of Plaintiff, Gardner, the Successor Trustee, determines distributions to be appropriate. (*See* Trust, Exhibit 1 at 23).

50.    Plaintiff, Gardner, the Successor Trustee, has not made any distributions of any trust assets and has determined that distribution of trust assets, at this time, would not be appropriate, in Plaintiff's sole discretion, in accordance with the provisions of the Trust.

51.    The Trust also has provisions relating to any "contest" "by any beneficiary" -- including Defendant, Gary Sinise Foundation. Pursuant to Section XII. of the Trust, "[i]f *any beneficiary* under this Trust Agreement [Gary Sinise

Foundation] or any other person shall *contest* the execution or the validity of this trust, or *any provision hereof*, or *shall institute* or join in (except as a party defendant) any *proceeding* [including a civil lawsuit or Arbitration]  to *contest* the validity of this trust *or to prevent any provision or provisions thereof from being carried out in accordance with the terms of this Trust Agreement* (unless such proceeding is being instituted in *good faith and with probable cause*), then *all benefits provided hereunder for such beneficiary* [Gary Sinise Foundation], or such benefits provided hereunder that would in any manner pass through a person successful in challenging this trust, are hereby *revoked and annulled*." "Each benefit conferred hereunder is made on the *condition precedent* that the beneficiary thereof shall *accept and agree to all of the provisions of this Trust Agreement*, and the provisions of this Section are an essential part of each and every benefit." (*See* Trust, Exhibit 1 at 23-24, Section XII.) (Emphasis added).

52.    Defendant, Gary Sinise Foundation, as will be described in subsequent paragraphs of this Statement of Facts, initiated a civil lawsuit against Plaintiff, Gardner, in bad faith and without probable cause in a Denton, Texas Probate Court.

53.    And, Defendant, Gary Sinise Foundation, as will be described in subsequent paragraphs of this Statement of Facts, initiated an arbitration proceeding against Plaintiff, Gardner, in bad faith and without probable cause in a Denton, Texas arbitrator's office.

54.    Pursuant to the terms of the Will of Pamela E. Banks, Banks gave "all my residuary estate, being all my property passing under this Will and not otherwise disposed of in accordance with the foregoing provisions, as follows: **Primary Disposition**: I give all my residuary estate to the Trustee [Plaintiff, Sammy Gardner,] then serving under the 2014 PB Living Trust created by Trust Agreement dated March 27, 2014, and as amended and completely restated by the First Amendment and Complete Restatement of the 2014 PB Living Trust dated July 2, 2019, to be added to and held as an integral part of the trust property subject to the terms of the 2014 PB Living Trust as now provided and as later amended." (*See* Will, Exhibit 2, at 2).

55.    Under Section IV. of the Will, Pamela E. Banks stated: "I constitute and *appoint my friend, SAMUEL C. GARDNER*, to serve as Independent Executor without bond of this, my last Will and Testament. (*See* Will, Exhibit 2, at 3) (Emphasis added).

56.    The Will also provides that Plaintiff, Gardner, shall not be required to post a bond for security and shall be independent "of the supervision and direction of any court of probate jurisdiction to the fullest extent permitted by law." (*See* Will, Exhibit 2, at 4).

57.    The Will gave Plaintiff, Gardner, "power to sell (for cash or credit, or both), exchange or otherwise dispose of all or part of my estate, publicly or privately,

and to lease, rent, loan, mortgage, pledge or otherwise encumber all or part of my estate." (*See* Will, Exhibit 2, at 4).

58.    The Will gave Plaintiff, Gardner, authority to "distribute my estate in whole or in part at such time or times as my Executor [Gardner] deems advisable, and my Executor is authorized to make such distribution in cash, or in kind, or partly in cash and partly in kind." (*See* Will, Exhibit 2, at 6).

59.    The Will exculpated Plaintiff, Gardner, "for any act or omission except in the case of gross negligence, bad faith, fraud or intentional wrongdoing." (*See* Will, Exhibit 2, at 6).

60.    The Will provided that "[f]or serving as Executor hereunder, any Executor serving hereunder shall be *entitled to reasonable fees* commensurate with the duties and responsibilities undertaken, taking into account the value and nature of my estate and the time and work involved, without regard to any statutory provisions as to fees". (*See* Will, Exhibit 2, at 6-7).

61.    The Will defines "heirs-at-law" as being Defendant, Gary Sinise Foundation. Defendant, Gary Sinise Foundation is a "beneficiary" under the Will. (*See* Will, Exhibit 2, at 9).

62.    Section VIII. of the Will contains "PROVISIONS RELATING TO CONTEST" and provides: "If any beneficiary [Gary Sinise Foundation] under this Will, *any beneficiary* [Gary Sinise Foundation] *under any trust that I may create*

*during my life*, or any other person *shall contest* the probate or validity of this Will or of *any trust* [the 2014 PB Living Trust] *that I may create or any provision thereof* or *any provision or provisions* of this Will *or of any trust* [the 2014 PB Living Trust] *that I may create*, or <u>*shall institute*</u> or join in (except as a party defendant) *any proceeding* [Civil Lawsuit or Arbitration] to *contest* the validity of this Will or *any trust* [the 2014 PB Living Trust] *that I may create*, or to *prevent any provision or provisions of this Will or of any trust* [the 2014 PB Living Trust] *that I may create from being carried out in accordance with its terms* (**regardless** of whether such proceeding is being instituted in *good faith* and with *probable cause*), then *all benefits provided for such beneficiary* [Gary Sinise Foundation], or such benefits that would in any manner pass to a person successful in challenging this Will or its probate or *any trust that I may create, are hereby revoked and annulled*." "Each benefit conferred hereunder is made upon the condition precedent that each beneficiary [Gary Sinise Foundation] *shall accept and agree to all of the provisions of this Will,* and the provisions of this paragraph are an essential part of each and every benefit." (*See* Will, Exhibit 2, at 9-10) (Emphasis added).

63.     In May 2022, Defendant, Gary Sinise Foundation, contested the appointment of Plaintiff, Gardner, as the Independent Executor of the Will, and in May 2022 Gary Sinise Foundation initiated a civil lawsuit against Plaintiff, Gardner, in Denton County, Texas Probate Court, and, then, on October 14, 2022, Gary Sinise

Foundation initiated an Arbitration against Plaintiff, Gardner, in Denton County, Texas. Such legal proceedings were initiated by Defendant, Gary Sinise Foundation, without good faith and/or probable cause.

64.    Truist Investment Services, Inc. ("Truist") managed assets of the Trust and assets of the Estate of Pamela E. Banks prior to her heart attack and her eventual death.

65.    On February 23, 2022, after the heart attack which incapacitated Pamela E. Banks, Plaintiff, Gardner, executed with Truist two "DURABLE POWERS OF ATTORNEY" and "AFFIDAVITS" with respect to Truist accounts (WA*****47 and WA*****83) which contained assets of the Trust and the Estate.

66.    On March 30, 2022, Truist and Plaintiff, Gardner, executed a "TRUSTEE CERTIFICATION OF INVESTMENT POWERS" with regard to the assets of the Trust in account being managed by Truist -- account "WA*****52."

67.    As required by the Will, on March 2, 2022 an "**APPLICATION FOR PROBATE OF WILL AND ISSUANCE OF LETTERS TESTAMENTARY**" with respect to the Estate of Pamela E. Banks was filed by Plaintiff, Gardner, as the Applicant in the Probate Court of Collin County, Texas (the "Collin County Probate Proceeding").

68.    Defendant, Gary Sinise Foundation, first learned that it was a beneficiary of the Trust and Will on or about April 12, 2022 in a communication from Mr. Gardner's prior legal counsel.

69.    On April 19, 2022, Defendant, Gary Sinise Foundation's officers, including its CEO (at the time), met with Plaintiff, Gardner, and Plaintiff's wife, Deborah Gardner, at the residence of Pamela E. Banks located at 7 Stonebriar Way, Frisco, Texas, 75034 (the "Banks Residence"). The Banks Residence was and is an asset of the Trust and is located in Collin County, Texas.

70.    As required and authorized by the Trust, prior to April 19, 2022, Plaintiff, Gardner, was maintaining the Banks Residence and preparing the Banks Residence for liquidation and sale during a good real estate market which existed in April 2022 in Frisco, Texas.

71.    As required and authorized by the Trust and Will, prior to April 19, 2022, Plaintiff, Gardner, was maintaining the personal property of Pamela E. Banks located in the Banks Residence.

72.    By letter dated April 29, 2022, Gary Sinise Foundation demanded that Plaintiff, Gardner, convey to Gary Sinise Foundation the Banks Residence, and Gary Sinise Foundation provided a prepared deed conveying the Banks Residence to Gary Sinise Foundation and demanded that Plaintiff, Gardner, execute the deed and return it to Gary Sinise Foundation. (*See* Exhibit 5, attached).

73.    Gary Sinise Foundation's April 29, 2022 demand letter to Plaintiff, Gardner, also demanded that (1) Plaintiff, Gardner, "provide the Foundation with constructive possession of the contents" of the Banks Residence, (2) Plaintiff, Gardner, "[d]ecline to serve as Executor of the Estate," and (3) Plaintiff, Gardner, "[r]esign as Trustee of the 2014 PB Living Trust after conveyance of the Residence." (*See* Exhibit 5, attached, at 2).

74.    Also on April 29, 2022, Gary Sinise Foundation, by letter, demanded that Truist and "Hilltop Securities" (a financial advisor and manager of assets of the Trust and Pamela E. Bank's Estate) "freeze" all accounts of the Trust and Pamela E. Bank's Estate. (*See*, Exhibit 6, attached).

75.    Plaintiff, Gardner, has never authorized Gary Sinise Foundation to contact financial institutions, investment advisors and banks managing the assets of the Trust and Pamela E. Bank's Estate.

76.    Prior to April 29, 2022, Gary Sinise Foundation never sought or requested authorization from Plaintiff, Gardner, to contact financial institutions, investment advisors and banks managing the assets of the Trust and Pamela E. Bank's Estate.

77.    The actions of Gary Sinise Foundation, as described herein, and by Gary Sinise Foundation's April 29, 2022 letter, interfered with Plaintiff, Gardner's,

administration of the Trust and administration and management of the assets of Pamela E. Bank's Estate.

78.     No provision of the Trust or Will authorizes Gary Sinise Foundation, or any beneficiary of the Trust or Will, to contact financial institutions, investment advisors and banks managing the assets of the Trust and Pamela E. Bank's Estate.

79.     On April 29, 2022 Gary Sinise Foundation had no probable cause to take the actions that it did by the Foundation's letter dated April 29, 2022 to Truist and Hilltop Securities demanding that accounts of the Trust be "frozen."

80.     On April 29, 2022, Gary Sinise Foundation had no probable cause to demand that (1) Plaintiff, Gardner, execute a deed to convey the Banks Residence to Gary Sinise Foundation, (2) Plaintiff, Gardner, "provide the Foundation with constructive possession of the contents" of the Banks Residence, (3) Plaintiff, Gardner, "[d]ecline to serve as Executor of the Estate", or (4) Plaintiff, Gardner, "[r]esign as Trustee of the 2014 PB Living Trust after conveyance of the Residence." (*See* Exhibit 5, attached at 2).

81.     On May 17, 2022, Gary Sinise Foundation initiated a civil lawsuit against Plaintiff, Gardner, in Probate Court No. 2 of Denton County, Texas. Gary Sinise Foundation filed a document entitled "**PLAINTIFF'S ORIGINAL VERIFIED PETITION AND APPLICATION TO SUSPEND TRUSTEE,**

**APPOINT A RECEIVER AND FOR INJUNCTIVE RELIEF." (**See Exhibit 7,

attached). (the "Gary Sinise Foundation Denton County Lawsuit").

82.    As a Plaintiff, Gary Sinise Foundation requested in the Gary Sinise

Foundation Denton County Lawsuit that Judge Everett of Probate Court No. 2 of

Denton County, Texas enter a Temporary Injunction Order to (1) "suspend"

Plaintiff, Gardner's, powers "as trustee of the 2014 PB Living Trust", (2) "[a]ppoint

a receiver to take possession of the property of the 2014 Living Trust and administer

the Trust," (3) to "issue a temporary injunction enjoining" Plaintiff, Gardner, as

Trustee "of the 2014 PB Living Trust from" fulfilling Plaintiff, Gardner's,

responsibilities and duties as Trustee of the 2014 PB Living Trust. (*See* Exhibit 7 at

17-18).

83.    On May 17, 2022, Gary Sinise Foundation had no good faith and/or

probable cause to initiate and file the Gary Sinise Foundation Denton County

Lawsuit and no probable cause to seek the relief sought by Gary Sinise Foundation

in the Gary Sinise Foundation Denton County Lawsuit.

84.    In addition, on May 20, 2022, Gary Sinise Foundation initiated and

filed another lawsuit against Plaintiff, Gardner -- an "**OBJECTION TO**

**APPOINTMENT OF APPLICANT AS INDEPENDENT EXECUTOR**" in the

Estate of Pamela E. Banks, Deceased, probate action pending in the Probate Court

of Collin County, Texas. (*See* Exhibit 8, attached) (the "Gary Sinise Foundation Collin County Lawsuit").

85.    In the Gary Sinise Foundation Collin County Lawsuit, Gary Sinise Foundation objected to and contested Plaintiff, Gardner's, appointment as Independent Executor for the Estate of Pamela E. Banks. Gary Sinise Foundation requested that the Probate Court of Collin County, Texas "deny Samuel C. Gardner's application to be appointed as Independent Executor of the Estate" of Pamela E. Banks and requested that the Probate Court "instead appoint the Gary Sinise Foundation as Independent Executor of the Estate." (*See* Exhibit 8 at 7).

86.    On May 20, 2022, Gary Sinise Foundation had no good faith and/or probable cause to initiate and file the Gary Sinise Foundation Collin County Lawsuit and no good faith and/or probable cause to seek the relief sought by Gary Sinise Foundation in the Gary Sinise Foundation Collin County Lawsuit.

87.    In the Gary Sinise Foundation Denton County Lawsuit initiated and filed by Gary Sinise Foundation against Plaintiff, Gardner, during the months of May and June 2022, the parties to the Gary Sinise Foundation Denton County Lawsuit conducted expedited and voluminous discovery and exchanged voluminous documents. Plaintiff, Gardner's, deposition and the deposition of Plaintiff, Gardner's, wife, Debbie Gardner, were taken over the course of two days by Gary

Sinise Foundation. Plaintiff, Gardner's, attorneys took depositions of representatives from Gary Sinise Foundation over the course of several days.

88.     In the Gary Sinise Foundation Denton County Lawsuit, voluminous documents were demanded by Gary Sinise Foundation and produced by Plaintiff, Gardner, and voluminous and expedited discovery was served and demanded by Gary Sinise Foundation from Plaintiff, Gardner, and others.

89.     In the Gary Sinise Foundation Denton County Lawsuit, on June 27 and June 28, 2022 Probate Judge Everett conducted an evidentiary hearing on the application by Gary Sinise Foundation for a Temporary Injunction Order against Plaintiff, Gardner.

90.     During the Temporary Injunction hearing, Judge Everett admitted exhibits which contain the "**SUMMARY OF DATE OF DEATH ASSETS OF PAMELA BANKS.**" Gary Sinise Foundation did not object.

91.     During the temporary injunction hearing in the Gary Sinise Foundation Denton County Lawsuit and during discovery in that case, Gary Sinise Foundation demanded by discovery and subpoena and obtained documentation regarding the assets of the Trust and the assets of the Pamela E. Banks Estate.

92.     During the Temporary Injunction hearing, Judge Everett admitted a spreadsheet Plaintiff, Gardner's, wife, Debbie Gardner, prepared to the best of her

ability to try to track the assets of the 2014 PB Living Trust. Gary Sinise Foundation did not object.

93.     In the Gary Sinise Foundation Denton County Lawsuit, Gary Sinise Foundation obtained through discovery, examination, testimony, depositions and request for production of documents all information in the possession custody and control of Plaintiff, Gardner regarding the assets of the Trust and the assets of the Pamela E. Banks Estate.

94.     At the conclusion of the presentation of the evidence in the Gary Sinise Foundation Denton County Lawsuit before Probate Judge Everett on June 27 and June 28, 2022, Judge Everett made his ruling from the bench. (*See* Exhibit 9, attached, transcript of Judge Everett ruling).

95.     After hearing all of the evidence presented by Gary Sinise Foundation in the Gary Sinise Foundation Denton County Lawsuit, Judge Everett denied substantially all of the relief sought by Gary Sinise Foundation.

96.     At the conclusion of Judge Everett's ruling, legal counsel for Gary Sinise Foundation asked Judge Everett whether or not Plaintiff, Gardner, was free to pay legal fees to Plaintiff, Gardner's lawyers. Judge Everett responded that he [Plaintiff, Gardner] will "continue to -- whatever powers are granted underneath the trust agreement, he [Plaintiff, Gardner] will continue to have those powers." (*See* Exhibit 9 at 9-10).

97.    In the Gary Sinise Foundation Denton County Lawsuit before Judge Everett, on July 1, 2022, Judge Everett signed his "**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S APPLICATION TO SUSPEND TRUSTEE, APPOINT A RECEIVER AND FOR TEMPORARY INJUNCTIVE RELIEF.**" (*See* Exhibit 10, attached).

98.    Judge Everett's Order specifically noted "that Samuel C. Gardner, as Successor Trustee of the Trust, shall have and retain all powers granted to him by the Trust, which are not specifically restrain or enjoined by this Order." (*See* Exhibit 10 at 2).

99.    As Ordered by Judge Everett on July 1, 2022, through the date of the filing of this Original Complaint, Plaintiff, Gardner, has continued to exercise all powers granted to Plaintiff, Gardner, by the 2014 PB Living Trust, including the payment of expenses, and Plaintiff, Gardner, has continued to maintain and protect the assets of the 2014 PB Living Trust and the assets of the Pamela E. Banks Estate.

100.    On July 18, 2022, Gary Sinise Foundation filed a "**NOTICE OF INTERLOCUTORY APPEAL**" appealing Judge Everett's July 1, 2022 Order. (*See* Exhibit 11, attached). Gary Sinise Foundation had no probable cause to initiate an appeal and to initiate continued claims against Plaintiff, Gardner. Gary Sinise Foundation's initiation of an appeal was not in good faith and without probable cause.

101.   On December 1, 2022, the Court of Appeals for the Second Appellate District of Texas at Fort Worth, Texas dismissed Gary Sinise Foundation's appeal. (*See* Exhibit 12, attached).

102.   On August 12, 2022, Plaintiff, Gardner, and Gary Sinise Foundation participated in a mediation with Roger Yale, Esq. ("Yale") acting as the mediator, who conducted the mediation pursuant to the laws of the State of Texas in Chapter 154 of the Texas Civil Practice and Remedies Code.

103.   At the conclusion of the August 12, 2022 mediation, all of the parties and attorneys executed a written **MEDIATED SETTLEMENT AGREEMENT.** (the "Mediated Settlement Agreement" or "MSA") (*See* Exhibit 13, attached).

104.   The Mediated Settlement Agreement, on its face, stated that it is "a final binding contract and not subject to revocation." (*See* Exhibit 13, attached at 3, ¶ 14).

105.   And in bold type, the Mediated Settlement Agreement states "**THIS AGREEMENT SHALL BE BINDING ON THE PARTIES AND SHALL NOT BE SUBJECT TO REVOCATION. THE PARTIES SHALL BE ENTITLED TO A JUDGMENT ON THE MEDIATED SETTLEMENT AGREEMENT NOTWITHSTANDING RULE 11, TEXAS RULES OF CIVIL PROCEDURE OR ANY OTHER RULE OF LAW**." (*See* Exhibit 13, attached at 3).

106.   The Mediated Settlement Agreement also states in bold and all caps that "**EACH PARTY SPECIFICALLY STIPULATES AND AGREES THAT**

**THEY HAVE ENTERED INTO THIS AGREEMENT FREELY AND VOLUNTARILY. THAT THEY HAVE BEEN REPRESENTED BY COUNSEL OF THEIR OWN CHOICE. THAT THEY HAVE READ IT WORD FOR WORD, FULLY UNDERSTAND IT, AND ARE WILLING TO BE BOUND BY IT COMPLETELY.** (*See* Exhibit 13, attached at 3).

107.   The Mediated Settlement Agreement required Gary Sinise Foundation to pay Plaintiff, Gardner, "the sum of $1,565,000.00 by delivery to the Yale Law Group IOLTA Trust Account." (*See* Exhibit 13, attached at 2, ℙ 6.).

108.   Gary Sinise Foundation did not pay Plaintiff, Gardner, "the sum of $1,565,000.00 by delivery to the Yale Law Group IOLTA Trust Account" as required by the Mediated Settlement Agreement.

109.   The Mediated Settlement Agreement required Gary Sinise Foundation to execute a "full and complete mutual release" agreement with Plaintiff, Gardner. (*See* Exhibit 13, attached at 2, ℙ 7.).

110.   Gary Sinise Foundation did not execute a "full and complete mutual release" agreement with Plaintiff, Gardner.

111.   The Mediated Settlement Agreement required Gary Sinise Foundation to execute an indemnification agreement so that "Gardner shall be indemnified by the Foundation for his acts as Trustee in conformity with the exculpatory language

as stated in Section VII AA of the Trust Agreement. (*See* Exhibit 13, attached at 2, ⁋ 8.)

112.   Gary Sinise Foundation did not execute an indemnification agreement so that "Gardner shall be indemnified by the Foundation for his acts as Trustee in conformity with the exculpatory language as stated in Section VII AA of the Trust Agreement."

113.   The mediation was conducted on Friday, August 12, 2022.

114.   On Monday, August 15, 2022, Donovan Campbell, Esq., as legal counsel for Plaintiff, Gardner, sent two emails to Gary Sinise Foundation's three legal counsel attaching drafts of the ancillary documents required by the Mediated Settlement Agreement which was executed by Plaintiff, Gardner, and Gary Sinise Foundation the previous Friday, August 12, 2022. (*See* Exhibit 14, attached).

115.   Mr. Campbell's August 15, 2022 email attached draft copies of the following ancillary documents to the Mediated Settlement Agreement: (1) Sammy Gardner's proposed "Declination to Serve as Independent Executor in the Collin County Probate Court Action" (in accordance with Plaintiff, Gardner's, promise in the Mediated Settlement Agreement, Exhibit 13 at 2, ⁋ 2.), (2) Mutual Release documents for the "Litigation" as defined in the Mediated Settlement Agreement (Exhibit 13 at 1-2, ⁋ 7) (the "Mutual Release Agreement"), (3) Successor Trustee's (Plaintiff, Gardner's) Agreed Notice of Nonsuit and Dismissal of all claims in the

litigation (and Orders thereon) (in accordance with Plaintiff, Gardner's, promise in the Mediated Settlement Agreement, Exhibit 13 at 2, ℙ 4.), (4) "Notice of Resignation of Successor Trustee and Petition to Appoint Successor" (in accordance with Plaintiff, Gardner's, promise in the Mediated Settlement Agreement, Exhibit 13 at 2, ℙ 1.), and (5) the "Indemnification Agreement" of Plaintiff, Gardner, (referenced in the Mediated Settlement Agreement at Exhibit 13, at 2, ℙ 8.) (the "Indemnification Agreement").

116.   In addition to other failures by Gary Sinise Foundation and other breaches of the Mediated Settlement Agreement by Gary Sinise Foundation, Gary Sinise Foundation refused to execute the Mutual Release Agreement (as required by the Mediated Settlement Agreement, ℙ 7), refused to execute the Indemnity Agreement (as required by the Mediated Settlement Agreement, ℙ 8), and refused to deliver the promised $1.56 million for the benefit of Gardner (as required by the Mediated Settlement Agreement, ℙ 6).

117.   Gary Sinise Foundation did not fulfill its obligations and promises made to Plaintiff, Gardner, in the Mediated Settlement Agreement, and Gary Sinise Foundation breached the Mediated Settlement Agreement.

118.   The promises made by Gary Sinise Foundation to Plaintiff, Gardner in the Mediated Settlement Agreement were material.

119.   Because Gary Sinise Foundation breached a material provision of the Mediated Settlement Agreement, Plaintiff, Gardner is legally excused under Texas law from his performance in the Mediated Settlement Agreement, and Gary Sinise Foundation cannot, as a matter of law, enforce any provision in the Mediated Settlement Agreement against Plaintiff, Gardner.

120.   On October 14, 2022, Gary Sinise Foundation initiated an Arbitration proceeding (the "Arbitration") against Plaintiff, Gardner in Denton, Texas before the Arbitrator, Mr. Yale.

121.   On October 14, 2022, Gary Sinise Foundation filed its "CLAIMANT'S STATEMENT OF CLAIM" in the Arbitration. (*See* Exhibit 15, attached).

122.   In the Arbitration, Gary Sinise Foundation claimed against Plaintiff, Gardner, *inter alia,* that (1) a new and different version of the August 12, 2022 Mediated Settlement Agreement was required, (2) Plaintiff Gardner's collection of approximately "$6.5 million" from life insurance policies and annuities for the Trust was a "substantial and material change of circumstances", and, (3) without proof, and with no probable cause or good faith, Gary Sinise Foundation claimed that there must be an investigation of "whether Gardner has expended any of the $6.5 million to himself or made disbursements that are not reasonable or necessary", and (4) Gary Sinise Foundation accused Plaintiff, Gardner of acting in "bad faith."

123.   Gary Sinise Foundation claimed in the Arbitration and its "STATEMENT OF CLAIM" that "[t]he Foundation believes the $6.5 million collected by Gardner after the Mediation is a material change of circumstances that must be addressed in the final version of the settlement agreement" and that "Gardner's failure to disclose to the Mediator or the Foundation his efforts to collect $6.5 million prior to the mediation constitutes bad faith." (*See* Exhibit 15, attached at 7).

124.   In addition, Gary Sinise Foundation claimed in the Arbitration and its "STATEMENT OF CLAIM" that "the Foundation believes that Gardner manipulated the mediation process to wrongfully obtain control of these monies." (*See* Exhibit 15, attached at 8).

125.   Gary Sinise Foundation, in the Arbitration, "proposed additional provisions be added to the settlement agreement" which would require, *inter alia*, "Gardner to transfer the funds in the accounts [of the trust] to the mediator." (*See* Exhibit 15, attached at 8).

126.   Gary Sinise Foundation claimed in the Arbitration that "Gardner's actions, both at mediation and post-mediation" "are evidence of Gardner's *lack of trustworthiness* and his *bad faith negotiation* over the settlement agreement." (*See* Exhibit 15, attached at 9) (emphasis added).

127.   On October 14, 2022, Gary Sinise Foundation had no probable cause or good faith to initiate the Arbitration proceeding against Plaintiff, Gardner.

128.   On October 14, 2022, Gary Sinise Foundation had no bases, and no probable cause, or good faith to make the contentions and claims against Plaintiff, Gardner as were made by Gary Sinise Foundation in the arbitration proceeding.

129.   On Friday, December 9, 2022, Arbitrator Yale conducted the Arbitration Final Hearing in his office in Denton, Denton County, Texas with Plaintiff, Gardner, Plaintiff, Gardner's legal counsel and legal counsel for Gary Sinise Foundation in attendance.

130.   At the conclusion of the Arbitration Final Hearing on December 9, 2022, in accordance with the request from the Arbitrator, Plaintiff, Gardner's legal counsel, Donovan Campbell, Esq., sent an email to the Arbitrator and legal counsel for Gary Sinise Foundation attaching the Mutual Release and Indemnity Agreement that was initially served on Gary Sinise Foundation's legal counsel on Monday, August 15, 2022 -- just three days after the Mediation concluded on Friday, August 12, 2022. (*See* Exhibit 16, attached).

131.   As of December 9, 2022, Gary Sinise Foundation continued to fail and continued to refuse to execute the Mutual Release Agreement and Indemnity Agreement served on Gary Sinise Foundation by Plaintiff, Gardner's legal counsel, Donovan Campbell, Esq. on August 12, 2022. (*See* Exhibit 16 and see Exhibit 14).

132.    On December 14, 2022, Arbitrator Yale issued his written "FINAL REASONED AWARD" in the Arbitration initiated by Gary Sinise Foundation against Plaintiff, Gardner, on October 14, 2022. (*See* Exhibit 17, attached).

133.    In his FINAL REASONED AWARD Arbitrator Yale found that "the MSA included provisions that necessitated the construction of additional documents including the resignation of Trustee, a written declination to serve as Independent Executor, dismissal documents, and a non-suit as to the probate of the will. Additionally, the MSA *requires the execution of full and complete releases of one another*, and the *Trustee [Plaintiff, Gardner] is entitled to indemnification in conformity with the MSA and the trust agreement*." (*See* Exhibit 17, attached at 4) (emphasis added).

134.    Arbitrator Yale also found in his FINAL REASONED AWARD that "[t]here is *no evidence that supports that the Foundation* sought to finalize this matter by seeking a Final Judgment in conformity with the MSA, that [there is no evidence that] *the Foundation tendered funds to the mediator to be held for distribution of the Final Order be entered by the trial court*." (*See* Exhibit 17, attached at 4) (emphasis added).

135.    Arbitrator Yale, in the Arbitration, held that Gary Sinise Foundation did not perform its responsibilities required in the Mediated Settlement Agreement and breached the Mediated Settlement Agreement.

136.   Arbitrator Yale also found that "the ancillary documents referenced above [served and provided by Plaintiff Gardner's legal counsel, Donovan Campbell, Esq. on August 15, 2022] coupled with the MSA would equate to the full execution version of the Agreement."  (*See* Exhibit 17, attached at 4).

137.   Arbitrator Yale rejected Gary Sinise Foundation's "pleadings" requesting that "the Arbitrator should fashion a resolution relating to the receipt of the approximately $6,500,000 by the Trustee post-mediation, including the conducting of an investigation as to the use of the funds" because "[w]hen the Arbitrator inquired of the Foundation's counsel for the source of authority to conduct the investigation, the reply was that it is contained in the Arbitration Agreement." The Arbitrator then ruled: "That proposition is rejected *in toto* by the Arbitrator." (*See* Exhibit 17, attached at 4-5).

138.   With respect to Gary Sinise Foundation's Arbitration claim that Plaintiff, Gardner, engaged in "bad faith", the Arbitrator found that "[t]he Foundation presented no evidence of damages" at the Arbitration Final Hearing. The Arbitrator rejected Gary Sinise Foundation's arbitration claim that Plaintiff, Gardner, engaged in "bad faith." (*See* Exhibit 17, attached at 6).

139.   In conclusion, Arbitrator Yale said: "Specifically, the Arbitrator" "a. has not found bad faith by the trustee," and "c. *Had the Foundation tendered the amounts contemplated in the MSA,* in all likelihood, the Foundation could have

moved in the Probate Court for the Trustee to comply with his resignation and delivery of the assets *well before the Arbitration*." (*See* Exhibit 17, attached at 8).

140.   As repeatedly found by Arbitrator Yale, Gary Sinise Foundation did not pay and did not tender "the sum of $1,565,000" to or for Plaintiff, Gardner as required by the Mediated Settlement Agreement. (*See* Exhibit 13, attached at 2, ⁋ 6.).

141.   On January 10, 2023, Denton County Probate Court No. 2 entered an Order confirming the arbitration award and approving and enforcing the Mediated Settlement Agreement and Final Judgment. (*See* Exhibit 18, attached). (the "Final Probate Order.").

142.   The Final Probate Order required "the Foundation and Gardner" to "execute and deliver an agreed to Mutual Release pursuant to the MSA" and an Ordered that "Gardner as Trustee is entitled to indemnification in conformity with the MSA and the Trust Agreement and the Foundation and Gardner shall execute and deliver an indemnification signed by the respective parties pursuant to the MSA." (*See* Exhibit 18, attached at 2-3, ⁋⁋ 3. And 4.)

143.   Following the entry of the January 10, 2023 Final Probate Order, on January 17, 2023, Plaintiff, Gardner's, legal counsel, Donovan Campbell, Esq. delivered to Mr. Yale, pursuant to the January 10, 2023 Final Probate Order executed

copies of the Mutual Release and Indemnification Agreement signed by Plaintiff, Gardner. (*See* Exhibit 19, attached).

144.   On January 23, 2023, Mr. Yale sent a letter to legal counsel for Plaintiff, Gardner and Defendant, Gary Sinise Foundation confirming receipt of an "email from Brandy Baxter-Thompson [Gary Sinise Foundation legal counsel] objecting to the contents of the Campbell documents referred to above [Mr. Campbell's January 17, 2023 letter (Exhibit 19)]. (*See* Exhibit 20, attached).

145.   As of the filing of this Original Complaint, Gary Sinise Foundation has refused, and continues to refuse, to execute the Mutual Release Agreement and the Indemnity Agreement as required by the Mediated Settlement Agreement despite receiving drafts of those agreements on August 15, 2022, - the Monday following the August 12, 2022 mediation (Exhibit 14), on December 19, 2022 (Exhibit 16), and again on January 17, 2023 (Exhibit 19).

146.   Gary Sinise Foundation has breached the Mediated Settlement Agreement by, *inter alia*, failing to "pay Gardner the sum of $1,565,000" as required by the Mediated Settlement Agreement after execution of the agreement on August 12, 2022. (*See* Exhibit 13, at 2, ℗ 6.)

147.   Gary Sinise Foundation has breached the Mediated Settlement Agreement by, *inter alia*, refusing to "execute" a "full and complete mutual releases of one another." (*See* Exhibit 13, at 2, ℗ 7.)

148.    Gary Sinise Foundation has breached the Mediated Settlement Agreement by, *inter alia*, refusing to "execute" the Indemnification Agreement as required by the MSA for Gardner to be "indemnified by the Foundation for his acts as Trustee in conformity with the exculpatory language as stated in Section VII AA of the Trust Agreement." (*See* Exhibit 13, at 2, ℙ 8).

149.    Gary Sinise Foundation has interfered with Plaintiff, Gardner's, management and administration of the affairs of the Trust.

150.    Gary Sinise Foundation has interfered with Plaintiff, Gardner's, responsibilities under the Will to manage the assets of the Estate of Pamela E. Banks.

151.    Gary Sinise Foundation without "good faith" or "probable cause" contacted and interfered with Plaintiff Gardner's investment relationships with Truist and Hilltop Securities.

152.    Gary Sinise Foundation, as recently as January 2023, contacted Plaintiff Gardner's banker at American National Bank in McKinney, Texas and interfered with Plaintiff, Gardner's banking relationship with American National Bank without "good faith" or "probable cause".

153.    Gary Sinise Foundation initiated and filed the Gary Sinise Foundation Denton County Lawsuit without probable cause and/or good faith and sought in that legal proceeding to contest provisions of the Trust from being carried out in accordance with the terms of the Trust Agreement in violation of Section XII of the

Trust and, consequently, "all benefits provided" in the Trust Agreement to Gary Sinise Foundation are "revoked and annulled."

154.    Gary Sinise Foundation initiated and filed the Gary Sinise Foundation Collin County Lawsuit without probable cause and/or good faith and sought in that legal proceeding to contest provisions of the Will and Trust from being carried out in accordance with the terms of the Will and Trust Agreement in violation of Section VIII of the Will and, consequently, "all benefits provided" in the Will and Trust Agreement to Gary Sinise Foundation are "revoked and annulled."

155.    Gary Sinise Foundation initiated and filed the Gary Sinise Arbitration before Arbitrator Yale without probable cause and/or good faith and sought in that legal proceeding to contest provisions of the Trust from being carried out in accordance with the terms of the Trust Agreement in violation of Section XII of the Trust and, consequently, "all benefits provided" in the Trust Agreement to Gary Sinise Foundation are "revoked and annulled."

156.    A different nonprofit charity with the same or similar mission as Gary Sinise Foundation should be substituted as the "heirs-in-law" pursuant to the Trust Agreement and become the beneficiary to receive distributions of Trust assets when, in the discretion of Plaintiff, Gardner, the Trust is ready to make distributions.

## V.

## CONDITIONS PRECEDENT

157.   All conditions precedent to the filing of this cause of action have been satisfied.

158.   Plaintiff pleads all of Plaintiff's claims, causes of action, relief and remedies demanded herein, and further pleads in this case all matters, claims and causes of action alternatively, without specifying each separate paragraph, and Plaintiff requests relief and Judgment be granted in the alternative where applicable.

## VI.

## COUNT 1

## BREACH OF CONTRACT

159.   Plaintiff fully incorporates the allegations in paragraphs I. through V. of this Complaint.

160.   Plaintiff and Defendant Gary Sinise Foundation have a valid, enforceable contract, the Mediated Settlement Agreement.

161.   Plaintiff is a proper party to bring suit for breach of the Mediated Settlement Agreement by Defendant.

162.   Plaintiff performed, tendered performance of, or was excused from performing Plaintiff's contractual obligations under the Mediated Settlement Agreement.

163.    Defendant Gary Sinise Foundation breached the Mediated Settlement Agreement. Defendant Gary Sinise Foundation did not perform under the Mediated Settlement Agreement as Defendant Gary Sinise Foundation was required to do.

164.    Defendant's breach of the Mediated Settlement Agreement was material.

165.    Despite receiving a demand to pay Plaintiff's claims, Defendant failed and refused, and continues to fail and refuse, to perform as the Defendant Gary Sinise Foundation is required to do under the Mediated Settlement Agreement.

166.    Defendant delayed performing for Plaintiff as Defendant was required to do under the Mediated Settlement Agreement.

167.    Defendant's breach of the Mediated Settlement Agreement caused injury to Plaintiff.

168.    Plaintiff seeks a Judgment of the Court that because of the material breach of the Mediated Settlement Agreement by Defendant, and because Defendant's material breach occurred first, Plaintiff is not required to perform pursuant to the Mediated Settlement Agreement and that any provisions of the Mediated Settlement Agreement acting against Plaintiff and/or benefitting Defendant should be declared null and void due to Defendant's first material breach of the Mediated Settlement Agreement.

169.    Plaintiff seeks a Judgment of the Court enforcing Defendant Gary Sinise Foundation's performance of Defendant Gary Sinise Foundation's obligations set forth in the Mediated Settlement Agreement.

## COUNT 2

### DECLARATORY RELIEF – 28 U.S.C. § 2201-
### MUTUAL RELEASE AGREEMENT.

170.    Plaintiff fully incorporates the allegations in paragraphs I. through V. of this Complaint.

171.    The Mediated Settlement Agreement required Defendant Gary Sinise Foundation to execute a full and complete Mutual Release Agreement with Plaintiff.

172.    On August 15, 2022, Plaintiff tendered to Defendant Gary Sinise Foundation a draft of the full and complete Mutual Release Agreement required by the Mediated Settlement Agreement.

173.    Defendant Gary Sinise Foundation did not respond, and did not dispute the draft and form of the Mutual Release Agreement Plaintiff tendered to Defendant Gary Sinise Foundation on August 15, 2022.

174.    As of the filing of this Original Complaint, Defendant Gary Sinise Foundation refuses, and continues to refuse to execute the Mutual Release Agreement Plaintiff tendered to Defendant on August 15, 2022 as required by the Mediated Settlement Agreement.

175.   Plaintiff seeks a declaration of the Court incorporating into a Final Judgment of the Court the language of the Mutual Release Agreement Plaintiff tendered to Defendant Gary Sinise Foundation on August 15, 2022.

## COUNT 3

## DECLARATORY RELIEF– 28 U.S.C. § 2201 -- INDEMNITY AGREEMENT.

176.   Plaintiff fully incorporates the allegations in paragraphs I. through V. of this Complaint.

177.   The Mediated Settlement Agreement required Defendant Gary Sinise Foundation to execute an Indemnity Agreement consistent with the Trust Agreement, Section VII, ℙ AA, to indemnify Plaintiff from liability except for "such Trustee's willful misconduct or personal dishonesty."

178.   On August 15, 2022, Plaintiff tendered to Defendant Gary Sinise Foundation a draft of the Indemnity Agreement required by the Mediated Settlement Agreement.

179.   Defendant Gary Sinise Foundation did not respond, and did not dispute the draft and form of the Indemnity Agreement Plaintiff tendered to Defendant Gary Sinise Foundation on August 15, 2022.

180.   As of the filing of this Original Complaint, Defendant Gary Sinise Foundation refuses, and continues to refuse to execute the Indemnity Agreement

Plaintiff tendered to Defendant Gary Sinise Foundation on August 15, 2022 as required by the Mediated Settlement Agreement.

181.    Plaintiff seeks a declaration of the Court incorporating into a Final Judgment of the Court the language of the Indemnity Agreement Plaintiff tendered to Defendant Gary Sinise Foundation on August 15, 2022.

182.    Plaintiff seeks a declaration of the Court incorporating into the Final Judgment an Order that Plaintiff cannot be liable except for "willful misconduct" or "personal dishonesty" in the administration and/or management of the Trust.

## COUNT 4

## DECLARATORY RELIEF– 28 U.S.C. § 2201 -- RES JUDICATA AND COLLATERAL ESTOPPEL

183.    Plaintiff fully incorporates the allegations in paragraphs I. through V. of this Complaint.

184.    All claims by Defendant Gary Sinise Foundation against Plaintiff, Gardner for any alleged breach of fiduciary duties, negligence or any other act or omission except for "willful misconduct" or "personal dishonesty" in the administration and/or management of the Trust are barred by res judicata arising out of the Arbitration award by Arbitrator Yale.

185.    All claims by Defendant Gary Sinise Foundation against Plaintiff, Gardner for any alleged breach of fiduciary duties, negligence or any other act or omission except for "willful misconduct" or "personal dishonesty" in the

administration and/or management of the Trust are barred by res judicata arising out of the Final Judgment entered by Judge Everett in the Gary Sinise Foundation Denton County Litigation.

186.   All claims by Defendant Gary Sinise Foundation against Plaintiff, Gardner for any alleged breach of fiduciary duties, negligence or any other act or omission except for "willful misconduct" or "personal dishonesty" in the administration and/or management of the Trust are barred by collateral estoppel arising out of the Arbitration award by Arbitrator Yale.

187.   All claims by Defendant Gary Sinise Foundation against Plaintiff, Gardner for any alleged breach of fiduciary duties, negligence or any other act or omission except for "willful misconduct" or "personal dishonesty" in the administration and/or management of the Trust are barred by collateral estoppel arising out of the Final Judgment entered by Judge Everett in the Gary Sinise Foundation Denton County Litigation.

188.   Plaintiff seeks a declaration of the Court incorporating into a Final Judgment of the Court an Order that all claims by Defendant Gary Sinise Foundation against Plaintiff, Gardner for any alleged breach of fiduciary duties, negligence or any other act or omission except for "willful misconduct" or "personal dishonesty" in the administration and/or management of the Trust are barred by res judicata arising out of the Arbitration award by Arbitrator Yale.

189.   Plaintiff seeks a declaration of the Court incorporating into a Final Judgment of the Court an Order that all claims by Defendant Gary Sinise Foundation against Plaintiff, Gardner for any alleged breach of fiduciary duties, negligence or any other act or omission except for "willful misconduct" or "personal dishonesty" in the administration and/or management of the Trust are barred by res judicata arising out of the Final Judgment entered by Judge Everett in the Gary Sinise Foundation Denton County Litigation.

190.   Plaintiff seeks a declaration of the Court incorporating into a Final Judgment of the Court an Order that all claims by Defendant Gary Sinise Foundation against Plaintiff, Gardner for any alleged breach of fiduciary duties, negligence or any other act or omission except for "willful misconduct" or "personal dishonesty" in the administration and/or management of the Trust are barred by collateral estoppel arising out of the Arbitration award by Arbitrator Yale.

191.   Plaintiff seeks a declaration of the Court incorporating into a Final Judgment of the Court an Order that all claims by Defendant Gary Sinise Foundation against Plaintiff, Gardner for any alleged breach of fiduciary duties, negligence or any other act or omission except for "willful misconduct" or "personal dishonesty" in the administration and/or management of the Trust are barred by collateral estoppel arising out of the Final Judgment entered by Judge Everett in the Gary Sinise Foundation Denton County Litigation

192.    Plaintiff seeks a declaration of the Court incorporating into the Final Judgment an Order that Plaintiff cannot be liable to Defendant Gary Sinise Foundation except for "willful misconduct" or "personal dishonesty" in the administration and/or management of the Trust because any such claims by Defendant Gary Sinise Foundation are barred by the doctrines of res judicata and collateral estoppel.

## COUNT 5

**DECLARATORY RELIEF -- 28 U.S.C. § 2201- FORFEITURE OF GARY SINISE FOUNDATION BENEFICIARY DISTRIBUTION UNDER THE TRUST.**

193.    Plaintiff fully incorporates the allegations in paragraphs I. through V. of this Complaint.

194.    Defendant Gary Sinise Foundation has contested provisions of the Trust Agreement with respect to Plaintiff in violation of Section XII of the Trust Agreement.

195.    Defendant Gary Sinise Foundation instituted multiple legal proceedings including the Gary Sinise Foundation Denton County Lawsuit, the Gary Sinise Foundation Collin County Lawsuit and the Gary Sinise Arbitration with Mr. Yale to contest the validity of the Trust Agreement and/or to prevent provisions in the Trust Agreement from being carried out in accordance with the terms of the Trust Agreement.

196.    These actions of Defendant Gary Sinise Foundation were taken without good faith and/or probable cause.

197.    As a result of the actions of Defendant Gary Sinise Foundation in initiating multiple legal proceedings against Plaintiff without good faith and/or probable cause, "all benefits" to Defendant Gary Sinise Foundation are "revoked and annulled" pursuant to Section XII of the Trust Agreement.

198.    A different nonprofit charity with the same or similar mission as Defendant Gary Sinise Foundation should be substituted for Defendant Gary Sinise Foundation as the "heirs-at-law" and as the beneficiary entitled to receive distributions from the Trust assets

199.    Plaintiff prays the Court to revoke and annul Defendant Gary Sinise Foundation's benefits under the Trust Agreement and to substitute a different nonprofit charity with the same or similar mission.

## COUNT 6

### DECLARATORY RELIEF – 28 U.S.C. § 2201-- FORFEITURE OF GARY SINISE FOUNDATION BENEFICIARY DISTRIBUTION UNDER THE WILL.

200.    Plaintiff fully incorporates the allegations in paragraphs I. through V. of this Complaint.

201.    Defendant Gary Sinise Foundation has contested provisions of the Will with respect to Plaintiff in violation of Section VIII. of the Will.

202. Defendant Gary Sinise Foundation instituted multiple legal proceedings including the Gary Sinise Foundation Denton County Lawsuit, the Gary Sinise Foundation Collin County Lawsuit and the Gary Sinise Arbitration with Mr. Yale to contest the validity of the Will and Trust Agreement and/or to prevent provisions in the Will and Trust Agreement from being carried out in accordance with the terms of the Will and Trust Agreement.

203. These actions of Defendant Gary Sinise Foundation were taken without good faith and/or probable cause.

204. As a result of the actions of Defendant Gary Sinise Foundation in initiating multiple legal proceedings against Plaintiff, Gardner without good faith and/or probable cause "all benefits" to Defendant Gary Sinise Foundation are "revoked and annulled" under both the Will and Trust Agreement pursuant to Section VIII. of the Will.

205. A different nonprofit charity with the same or similar mission as Defendant Gary Sinise Foundation should be substituted for Defendant Gary Sinise Foundation as the "heirs-at-law" and as the beneficiary entitled to receive distributions from the Will and Trust assets

206. Plaintiff prays the Court to revoke and annul Defendant Gary Sinise Foundation's benefits under the Will and Trust Agreement and to substitute a different nonprofit charity with the same or similar mission.

## COUNT 7

**DECLARATORY RELIEF – 28 U.S.C. § 2201- REFORMATION OF THE TRUST AND SUBSTITUTION OF DIFFERENT CHARITABLE BENEFICIARY.**

207.   Plaintiff fully incorporates the allegations in paragraphs I. through V. of this Complaint.

208.   The primary and preeminent duty and charge of a Court, when considering a trust issue, and of the parties thereto is to ascertain the true intent and purpose of the trust's settlor and then to effectuate that purpose.  *Frost National Bank v. Newton*, 554 S.W.2d 149 (Tex. 1977); *State v. Rubion*, 158 Tex. 43, 308 S.W.2d 4 (1957); *San Antonio ISD v. Division of World Missions of the Board of Missions of the Methodist Church*, 161 Tex. 471, 341 S.W.2d 896 (1960); *In re White Intervivos Trusts*, 248 S.W.3d 340 (Tex.App.—San Antonio 2007, no pet.); Texas Trust Code ("TTC") §§ 112.054(a)(2), (5), (b).

209.   Such trust intent is generally discerned from the language of the trust instrument itself.  *Rubion, supra*; *Newton, supra*; *DuPont v. Southern National Bank*, 771 F.2nd 874 (5th Cir. 1985); *In re White Intervivos Trusts, supra*.  However, it is such <u>true intent</u> that actually establishes the "terms of the trust," and it can be expressed by admissible evidence in written form or even by spoken words or conduct.  TTC §§ 111.004(15), 112.004, 112.051(c), and 116.002(12); *Ford v. Ford*, 492 S.W.2d 376 (Tex.Civ.App.—Texarkana 1973, writ ref'd n.r.e.); *Brinker v.*

*Wobaco Trust Limited*, 610 S.W.2d 160 (Tex.Civ.App.—Texarkana 1980, writ ref'd

n.r.e.).

210.   Pamela Banks' true intents and purposes in establishing her Trust are

set out, *inter alia,* expressly in the Trust itself: Pamela has disclosed to the world

what her purposes and intents were in the following Trust provisions:

> Trust § XII: If any beneficiary under this Trust Agreement . . .
> shall contest . . . the validity of this Trust, <u>or any provision hereof</u>,
> or shall institute or join in . . . any proceeding to contest the
> validity of this trust <u>or to prevent any provision or provisions</u>
> <u>hereof from being carried out in accordance with the terms of this</u>
> <u>Trust Agreement</u> . . . , then all benefits provided hereunder for
> such beneficiary . . . are hereby revoked and annulled . . . . Each
> benefit conferred hereunder is made on the condition precedent
> <u>that the beneficiary thereof shall accept and agree to all of the</u>
> <u>provisions of this Trust Agreement,</u> and the provisions of this
> Section are an essential part of each and every benefit.

> Trust § VII: If Pamela . . . shall fail, cease or refuse to act as
> Trustee hereunder, then the Settlor appoints <u>her friend</u>, Samuel
> C. Gardner, to serve as the successor Trustee of all trusts created
> or continued hereunder.

> Trust § VII.E: The Trustee is authorized to purchase from, sell
> to, <u>lend funds to,</u> or otherwise deal with the Trustee or with the
> Trustee as a partner or officer in any partnership, corporation or
> other entity, <u>or as executor</u> of the estate of any person, or with an
> affiliate of the Trustee, <u>or with a</u> director, officer, employee,
> employer, <u>partner or other business associate of the Trustee</u> or
> the Trustee's affiliate, or <u>with a relative of the Trustee</u> or <u>with</u>
> <u>the estate of the Settlor</u> or with any partnership, corporation, trust
> or other entity in which the Trustee may have an interest to the
> same extent and manner and for the same investment purposes
> as herein provided in respect of transactions with disinterested
> parties.   The provisions of this paragraph are made in full
> realization that said Trustee may be a partner, officer, director or

stockholder in any such entity <u>or an executor</u>, administrator or guardian of an estate, <u>and no principle or rule relating to self-dealing or divided loyalty shall be applied to any act of said Trustee</u>.

Trust § VII.AA:  No individual Trustee shall be liable for negligence or error of judgment, but shall be liable only for such Trustee's <u>willful misconduct or personal dishonesty</u>.

Trust § VII:  Any successor Trustee shall have and exercise the following rights, powers and privileges:

A. The Trustee shall have the power to make all partitions and divisions contemplated by this Trust Agreement.  The actual partitions and divisions made by the Trustee <u>shall be binding and conclusive upon all interested parties</u>.  Any partitions, divisions or <u>distributions may be made in cash, in kind, or partly in cash and partly in kind</u> . . . <u>as the Trustee shall see fit</u>.

B. The Trustee shall have full power and authority to manage, handle, invest, reinvest, convert, reconvert, sell for cash or credit, exchange, hold, dispose of, lease for any period, <u>whether or not longer than the life of the trust</u>, improve, repair, maintain, use, or pledge all or any part of the funds, assets and property constituting from time to time any part of the trust; borrow money; lend money; enter into contracts; <u>sue and be sued</u>; abandon, <u>settle, compromise or adjust by arbitration</u> or otherwise any disputes or controversies in favor of or against the trust; waive or release rights of any kind; <u>appoint, remove and act through agents</u>, managers and employees, and confer upon them such power and authority as deemed necessary or advisable; <u>pay all reasonable expenses</u>; <u>execute and deliver any</u> deeds, <u>contracts</u> or written instruments of any character appropriate to any of the powers or duties of the Trustee.  The Trustee is hereby empowered to open and maintain an account with a duly and properly registered and licensed security or commodity brokerage firm for the purchase and sale of stocks, bonds, options or securities and is hereby authorized to give written or verbal instructions by telephone, or telegraph, or otherwise to the brokers to buy and sell stocks, bonds, options or securities,

commodities, and to borrow money from or through the brokers and, if the Trustee deems proper, to secure payment therefore with property of this trust and the Trustee shall at all times have authority in every way to bind and obligate this trust for the carrying out of any contract arrangement or transaction which shall, for or on behalf of this trust, be entered into or made with or through the brokers.   The Trustee is hereby <u>authorized to employ attorneys, accountants, investment managers, specialists and such other agents</u> as the Trustee shall deem necessary or desirable.  <u>The Trustee may charge the compensation of such attorneys, accountants,</u> investment advisors, <u>specialists and other agents and any other expenses against the trust</u>.

C. Any property transferred to the trust by the Settlor from time to time constituting any part of the principal of the trust shall be deemed a proper investment, and <u>the Trustee shall be under no obligation to dispose of or convert any such property</u>.   The Trustee may invest and reinvest all funds available for investment or reinvestment at such times as deemed advisable in such investments as the Trustee is permitted to make pursuant to terms of this Trust Agreement.  The Trustee, except as herein otherwise specifically provided, shall have as wide latitude in the selection, retention or making of investments as an individual would have in retaining or investing his own funds, and shall not be limited to nor bound or governed by the provisions of the Texas Trust Code or by any other statutes or regulations respecting investments by trustees.

L. <u>No Trustee need post any bond for so acting</u>.

M. <u>No Court Supervision</u>: <u>No Trustee shall be required</u> to qualify before, be appointed by, or in the absence of a breach of trust, <u>account to any court or obtain the order or approval of any court in the exercise of any power or discretion granted</u> in this instrument.

N. The Trustee shall have all of the rights, powers and privileges set forth in the Texas Trust Code, except to the extent that same are in consistent with  the provisions hereunder, <u>in which event the provisions of this Trust Agreement shall govern</u>.  The powers

conferred upon the Trustee herein shall not be construed as in limitation of any authority conferred by law, but shall be construed as in addition thereto.

O. Any individual Trustee serving hereunder <u>shall be entitled to reasonable fees</u> commensurate with the Trustee's duties and responsibilities, taking into account the value and nature of the trust fund and the time and work involved. Any Trustee <u>shall be entitled to reimbursement for all reasonable expenses</u> incurred in such capacity.

R. Any Trustee hereunder whether original or successor may accept the trust assets as delivered to the Trustee by such prior fiduciary and shall be responsible only for such assets. <u>It is the Settlor's desire</u> that each Trustee be relieved of any duty, liability or responsibility that such Trustee may have as a successor fiduciary because of receiving assets or being entitled to receive assets from a prior fiduciary.

T. The Trustee is authorized to lend any part of the trust funds to the executors or administrators of the estate of the Settlor <u>in the Trustee's absolute discretion</u> and to purchase from the executors or administrators of the said estates any item of property for such sums and on such terms as the Trustee may deem wise and proper.

W. Upon the death of the Settlor, the Trustee shall be authorized to withhold from distribution of principal an amount of property <u>in the Trustee's judgment</u> sufficient to cover <u>any liability</u> imposed upon the Trustee or the trust estate for estate, inheritance or other taxes attributable to the estate of the Settlor or to meet <u>any obligations</u> (including <u>all taxes</u>) of the Settlor or <u>expenses with respect to administration of the Settlor's estate</u>, and <u>to pay such liabilities, obligations and expenses</u> out of the trust created hereunder. <u>Upon the Trustee being satisfied that the Trustee no longer has any liability</u> with respect to such taxes and there is no need to pay such liabilities, obligations and expenses, the balance of such withheld property shall be distributed. Neither the Trust estate nor any trust beneficiary shall be entitled to reimbursement from the estate of the Settlor

on account of any payment made pursuant to this paragraph.

Trust § IX: No beneficiary shall have the right or power to anticipate, by assignment or otherwise, any income or principal given to such beneficiary by this trust, <u>nor in advance of actually receiving same</u> have the right or power to sell, transfer, incumber, or in anywise charge same.

Trust § X:  It is the Settlor's intention that all parts of this Trust Agreement shall be effective and fully operative.  <u>The Trustee may seek and obtain court instructions for the purpose of carrying out as nearly as may be possible the intention of this Trust Agreement</u> as shown by the terms hereof.  The law of Texas shall govern the provisions of this Trust Agreement.

211.   Other admissible evidence of the Trust's terms and the true intent of Pamela includes the facts that, when Pamela was considering the amendments to be made to her Trust in or about July of 2019, she conducted extensive research into multiple potential charitable beneficiaries from the field of veterans'-service organizations, and Pamela narrowed her intended beneficiaries down to two such organizations: the Gary Sinise Foundation ("GSF") and Wounded Warrior Project ("WWP").  In Pamela's mind, these two possible choices were virtually tied for designation as her Trust's charitable beneficiary, but she settled on GSF based on the (now mistaken) belief and intent that GSF would adhere most closely, faithfully, and precisely to her true purposes and intents in settling the Trust, as expressed in those terms referenced above.   Paramount among those purposes and intents of Pamela were Trust §§: VII, appointing her long-time "friend," confidant, financial

power-of-attorney agent, and medical power-of-attorney agent, Samuel C. Gardner, as her Successor Trustee; XII, the forfeiture clause; VII.E, the "self-dealing" authorization clause; and VII.AA, the exculpatory clause.

212.   Alas, Pamela Banks' trust in and initial choice of GSF has now proven to be a faint hope and shattered dream: GSF has egregiously violated all of these primary purposes and intentions of Ms. Banks referenced herein by virtue of those overt, intentional, egregious, overly aggressive, and hostile acts and omissions committed against Samuel C. Gardner as her chosen Successor Trustee and named Independent Executor and directly contrary to and in violation of those crucial provisions in the Trust (as reported in Plaintiff's Original Verified Petition (the "First Petition") filed in the Probate Court of Denton County, Texas, Cause No. PR-2022-00608-B, on or about May 3, 2022, and in Plaintiff's Original Verified Petition and Application to Suspend Trustee, Appoint a Receiver, and for Injunctive Relief (the "Second Petition") filed in the Probate Court of Denton County, Texas, Cause No. PR-2022-00674-B,  on or about May 17, 2022, along with all other Motions, documents, Exhibits, and papers filed therein, all of which are incorporated herein by reference for the limited purpose of evidencing GSF's said wrongful acts and omissions).  At the time that Ms. Banks as Settlor established the Trust on or about July 2, 2019, she could not have known or anticipated and did not know or anticipate, *inter alia,* the circumstances and events (the "Circumstances") referenced above

involving GSF's violations of Ms. Banks purposes and intentions set out hereinabove. Indeed, Ms. Banks would "roll over in her grave" if she knew what GSF was now doing to actively, egregiously, and aggressively violate those purposes and intentions.

213.   Thankfully, Texas law provides remedies to restore the situation as nearly as possible to Pamela Banks' original intentions and purposes in establishing the Trust and its salient terms and naming an appropriate veterans'-service organization as the charitable beneficiary. Under TTC § 112.054, the common-law doctrines of reformation and equitable deviation, the doctrine of *cy pres*, Chapter 37 of the Texas Civil Practice and Remedies Code ("TCPRC"), and Trust § X, the Trust can be modified, reformed, and equitably deviated to remove Gary Sinise Foundation as the named charitable beneficiary and replace it with another charitable foundation as Pamela Banks truly intended sole charitable beneficiary to fully comply with and implement her most significant  purposes and intentions, as reflected in those Trust terms summarized hereinabove.

214.   TTC § 112.054 provides that, on the petition of a trustee, a court may order that the terms of the trust be modified if: the purposes of the trust have become impossible to fulfill; because of circumstances not known to or anticipated by the settlor, the order will further the purposes of the trust; modification of the trust is necessary or appropriate to prevent waste or impairment of the trust's

administration; the order is necessary or appropriate to achieve the settlor's tax objectives; or the order is not inconsistent with a material purpose of the trust. Moreover, whether a trust's terms should be so modified raises <u>fact issues to be resolved by the jury</u>. *Matter of Troy S. Poe Trust*, 591 S.W.3d 168 (Tex. App.—El Paso 2019, no pet.) (probate court reversed because it rejected party's request for jury trial).

215.    The doctrine of trust reformation dictates that terms of a trust may be reformed if the subject terms do not accurately reflect the settlor's true purposes and intentions with respect to the original establishment of the trust and to represent the true intentions of the settlor. *Brinker v. Wobaco Trust Limited,* 610 S.W.2d 160 (Tex. Civ. App.—Texarkana 1980, writ ref'd n.r.e.); *Ford v. Ford,* 492 S.W.2d 376 (Tex. Civ. App.—Texarkana 1973, writ ref'd).

216.    As to the doctrine of equitable deviation, a court of equity possesses authority to apply the doctrine of deviation implicit in the law of trusts to order a deviation from the terms of the trust if it appears that compliance with the original terms is impossible, impractical, or inexpedient, or that owing to circumstances not known to or not anticipated by the settlor, compliance would defeat or substantially impair the accomplishment of the true purposes of the trust. *Conte v. Ditta,* 287 S.W.3d 28 (Tex. App.—Houston [1ˢᵗ Dist.] 2007), *modified by* 298 S.W.3d 187 (Tex. 2009) (regarding unrelated limitations issues).

217.    Moreover, the doctrine of *cy pres* mandates that if a settlor's original intended charitable purpose becomes impractical, the trust may be reformed under the equitable doctrine of *cy pres*, pursuant to which the Court will direct that the trust property be applied to another charity as close as possible to the original one.  *Scott v. Sterrett,* 234 S.W.2d 917 (Tex. App.—Dallas 1950, writ ref'd n.r.e.); *English v. Johnson,* 95 S.W. 558 (Tex. App. 1906, writ ref'd).

218.    Pursuant to these doctrines referenced above, as well as Trust § X, and based upon the expected factual findings by the jury herein, a different charity with the same or similar mission purpose as Gary Sinise Foundation should be Ordered to be substituted as the sole charitable beneficiary of Pamela's Trust and Estate, and Defendant Gary Sinise Foundation should be Ordered permanently removed as any beneficiary of same.  Plaintiff hereby prays for such Orders.

219.    There are numerous other nonprofit charities which are eminently worthy of such Trust reformation and of being named the sole charitable beneficiary of Pamela's Trust and Estate. Numerous other nonprofit charities have the mission to honor and empower wounded warriors through serving veterans and service members who incurred a physical or mental injury, illness, or wound, coincident to their military service on or after September 11, 2001.  For instance, in 2020, Wounded Warrior Project ("WWP"), a charity with a similar mission purpose to Gary Sinise Foundation, expended and granted over $77 million for veterans' brain

and mental health and wellness programs, over $35 million for veterans' career assistance and financial-stability transition to civilian life, and over $29 million for community, family, and veterans' support connection programs, for a total exceeding $141 million spent to benefit wounded veterans in 2020 alone.

220.    Plaintiff incorporates into all of the following claims and causes of action all of those matters set out above and below, excepting only those, if any, that are inconsistent with the following claims and causes of action.

221.    Actual controversies exist between Plaintiff and Defendant Gary Sinise Foundation regarding, *inter alia,* the substitution of a different nonprofit charity with the same or similar mission as Gary Sinise Foundation as the beneficiary under the Trust and Will.    Accordingly, pursuant to the Texas Trust Code ("TTC") §§ 114.008(a) and 115.001(a) and (d), 28 U.S.C. § 2201 *et. seq.*, and under Trust § X, Plaintiff seeks a declaration of the rights, status, and other legal relations between and among Plaintiff and Defendant Gary Sinise Foundation regarding determinations of questions of the validity and construction under the herein-described documents, relationships, duties, and applicable law (including the Trust, the Will, TTC §§ 112.052, 113.082, 113.151-.152, 111.0035, 114.007, Texas Estates Code ("TEC") §§ 404.001, and common law). Additionally, to protect the Trust estate and the true remaindermen, Plaintiff seeks a construction of the Trust and

seeks instructions to implement Pamela Banks' true purposes and intents and this Court's declarations confirming same.

222. Specifically, Plaintiff seeks, additionally and alternatively, the following declarations and orders: (a) that Trust § XI is hereby reformed and modified to provide, in its entirety, that: "All distributions under this Trust Agreement to the Settlor's heirs-at-law shall be delivered and distributed unto the Wounded Warrior Project, Inc., 4899 Belfort Road, Suite 300, Jacksonville, Florida 32256, or another named charity with the same charitable purposes, or its or their successor entity, as shall be in existence at the time of distribution. Provided, however, if neither the Wounded Warrior Project, Inc. nor its successor entity shall be in existence at the said time of distribution, then the Settlor's estate shall instead be delivered and distributed unto the individual or individuals who would be entitled to the Settlor's estate under the laws of descent and distribution of the State of Texas pertaining to separate personal property, with such heirs-at-law being determined at the time the said distribution is to be made."; and that any and all other references in the Trust to any charitable beneficiary thereof shall mean only said Wounded Warrior Project, Inc. (or its successor entity), or such other charity with the same or similar mission and purpose; and (b) such further and supplemental relief based upon the above as may be necessary or proper, pursuant to 28 U.S.C. §§2201 and 2202, and other applicable law (collectively, the "Modifications").

## COUNT 8

## TTC § 112.054, TRUST § X, EQUITABLE DEVIATION, COMMON-LAW REFORMATION, AND *CY PRES* DOCTRINE ACTION TO REFORM AND MODIFY TRUST

223.   Plaintiff fully incorporates the allegations in paragraphs I. through V. of this Complaint.

224.   Because of those Circumstances referenced herein, as well as others, and in order to protect the Trust estate and its true charitable beneficiary, Plaintiff seeks judicial modification and/or reformation of the Trust pursuant to TTC § 112.054, Trust § X, the doctrine of equitable deviation, the doctrine of reformation in equity and/or common law, the doctrine of *cy pres*, and other applicable law.

225.   The Court should order the Modifications: so that the purposes of the Trust will be furthered; so that waste and/or impairment of the Trust's administration will be avoided; so that Pamela Banks' objectives will be achieved; because the purposes of the Trust have become impossible or impractical to fulfill if Gary Sinise Foundation remains the named charitable beneficiary; because the Ordered Modifications are not inconsistent with a material purpose of the Trust; to reflect the true intentions of Pamela Banks as the Settlor; to conform as closely as possible to Pamela Banks' original charitable intent; and/or for other valid reasons.

226.   Plaintiff prays that the Court order the Trust Modifications and order that said Modifications shall be effective as of the creation of the Trust, pursuant to

TTC § 112.054(c), the doctrine of equitable deviation, the doctrine of reformation, the doctrine of *cy pres*, and other applicable law or equity.

## VII.

## ACTUAL DAMAGES

227.   Plaintiff fully incorporates the allegations in paragraphs I. through VI. of this Complaint.

228.   Plaintiff has suffered injury as a proximate cause and producing cause of the actions of Defendant Gary Sinise Foundation described herein.

229.   Plaintiff is entitled to recover actual damages for Defendant Gary Sinise Foundation's actions and/or omissions described herein.

230.   Plaintiff is entitled to recover damages and expenses either from Defendant Gary Sinise Foundation or from reimbursement from the Trust which Plaintiff has incurred from Plaintiff's personal funds in order to defend against the actions of Defendant Gary Sinise Foundation described herein and any other expenses which Plaintiff has incurred with respect to his efforts and activities concerning the Trust and Will.

231.   Plaintiff is entitled to recover the amount of costs and expenses incurred by Plaintiff from Plaintiff's personal funds and resources as a result of the actions and/or omissions of Defendant Gary Sinise Foundation as reimbursement from the Trust and Will.

232.   Plaintiff prays for a Judgment from the Court authorizing Plaintiff to reimburse himself for his personal funds and personal expenses Plaintiff incurred in his role as Trustee and in his role as the named Independent Executor of the Estate of Pamela E. Banks.

233.   Plaintiff prays for Judgment against Defendant Gary Sinise Foundation to recover by Judgment of the Court the full amount of the $1,565,000 Defendant Gary Sinise Foundation promised to pay Plaintiff in the Mediated Settlement Agreement.

234.   Plaintiff is entitled to recover such other and further damages Plaintiff incurred as a proximate cause or producing cause of the actions and/or omissions of Defendant Gary Sinise Foundation described herein, for which Plaintiff hereby sues.

## VIII.

## ATTORNEYS FEES REQUESTED

235.   Plaintiff incorporates the averments in paragraphs I. and VII. of this Complaint.

236.   Plaintiff seeks and sues for the recovery of Plaintiff's reasonable and necessary attorney's fees incurred to enforce Plaintiff's legal rights against Defendant Gary Sinise Foundation in this case, in the United States District Court, in the United States Court of Appeals, if necessary, and in the Supreme Court of the United States, if necessary.

237.   Plaintiff seeks and sues for recovery from Defendant Gary Sinise Foundation or from reimbursement from the Trust for all attorney's fees incurred by Plaintiff with respect to the facts and circumstances and conduct of Defendant Gary Sinise Foundation described herein.

## IX.

## PREJUDGMENT INTEREST

238.   Plaintiff incorporates the averments in paragraphs I. and VIII. of this Complaint.

239.   Plaintiff seeks and sues for the recovery of prejudgment interest to the full extent that such interest is recoverable pursuant to law, contract, and/or equity.

## X.

## POST- JUDGMENT INTEREST

240.   Plaintiff incorporates the averments in paragraphs I. and IX. of this Complaint.

241.   Plaintiff seeks and sues for the recovery of post-judgment interest to the full extent that such interest is recoverable pursuant to law, contract, and/or equity.

## XI.

## JURY TRIAL

242.   Plaintiff demands a jury on all issues triable to a jury.

# XII.

## PRAYER

243.    For these reasons, Plaintiff prays that Defendant Gary Sinise Foundation be cited to appear and answer, and that Plaintiff be awarded Judgment or Order against Defendant Gary Sinise Foundation, for the following:

a.    Declaratory relief;

b.    Breach of contract relief;

c.    Actual damages;

d.    Forfeiture of Gary Sinise Foundation benefits;

e.    Reformation and/or modification of the Trust Agreement;

f.    Preliminary injunctive relief;

g.    Attorney's fees;

h.    Prejudgment interest

i.    Post-judgment interest;

j.    Cost of court and other litigation expenses; and,

k.    Such other, and further, relief, both general and special, whether at law or in equity, to which Plaintiff may be justly entitled.

**BUNDREN LAW GROUP, PLLC**

*/s/ Wm. Charles Bundren*
Wm.  Charles Bundren, Esq.
Lead Attorney
Attorney in Charge
State Bar No. 03343200
2591 Dallas Parkway, Suite 300
Frisco, Texas 75034
Tel: (214) 808-3555
Fax: (972) 624-5340
Email: Charles@Bundrenlaw.net

RADER & CAMPBELL
(A Professional Corporation)

*/s/ Donovan Campbell, Jr.*
Donovan Campbell, Jr.
Co-Counsel
State Bar No. 03725300
McCord Wilson
State Bar No. 00785266
Tel: (214) 630-4700
Fax: (214) 630-9996
dcampbell@radercampbell.com

**ATTORNEYS FOR SAMUEL C. GARDNER, INDIVIDUALLY AND AS SUCCESSOR TRUSTEE OF THE 2014 PB LIVING TRUST.**